PAUL L. SYLVESTER       *       NO. 2024-C-0310

VERSUS       *

      COURT OF APPEAL

MICHAEL D. SANTONE,       *
OCHSNER FOUNDATION       FOURTH CIRCUIT
HOSPITAL, ABC COMPANY,       *
AND XYZ INSURANCE       STATE OF LOUISIANA
COMPANY       * * * * * * *


APPLICATION FOR WRITS DIRECTED TO
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2019-09379, DIVISION "L"
Honorable Kern A. Reese, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Rosemary Ledet, Judge Tiffany Gautier Chase, Judge Dale N. Atkins, Judge Rachael D. Johnson)

ATKINS, J., DISSENTS FOR THE REASONS ASSIGNED BY JUDGE JOHNSON.

JOHNSON, J., DISSENTS WITH REASONS

Nairda T. Colon
Halley S. Carter
FRILOT L.L.C.
3700 Energy Centre, 1100 Poydras Street
New Orleans, La. 70163-3700

      COUNSEL FOR RELATORS

Stephen M. Smith
1425 N Broad Street, Suite 201
New Orleans, Louisiana 70119

      COUNSEL FOR RESPONDENT

           **WRIT GRANTED; JUDGMENT
           REVERSED; JUDGMENT RENDERED
           DISMISSING CASE WITHOUT PREJUDICE
           July 16, 2024**

*RML*

*DLD*

*TGC*

This is a medical malpractice case. Defendants/Relators—Ochsner Clinic Foundation and Michael Santone, N.P. (collectively "Ochsner")—seek review of the trial court's May 14, 2024 judgment (the "Judgment"). The Judgment granted the Motion to Set Aside Judgment of Dismissal for Abandonment (the "Motion"), which was filed by Plaintiff/Respondent—Paul L. Sylvester ("Mr. Sylvester"). We grant Ochsner's writ, reverse the Judgment, and render judgment dismissing without prejudice Mr. Sylvester's claims against Ochsner as abandoned.

***Factual and Procedural Background***

In 2019, three events occurred: (i) September 2019—Mr. Sylvester filed the petition; (ii) November 2019—Ochsner answered the petition; and (iii) December 2019, Ochsner sent written discovery requests to Mr. Sylvester—nine interrogatories and five requests for production of documents (the "2019 Discovery Requests").

In 2020, Mr. Sylvester's attorney of record—Stephen Smith ("Mr. Smith")—filed a Motion to Withdraw and Substitute Counsel of Record, which

1

was granted.[1] In 2021, the parties engaged in settlement discussions. A series of emails—sent between February 2021 and June 2021—reflect that Ochsner sought a settlement offer and that Mr. Sylvester submitted one. Another series of emails reflect that the parties met on October 20, 2021 to discuss the settlement offer.

On June 21, 2022, Mr. Smith—Mr. Sylvester's former attorney of record—sent an email to Ochsner's counsel stating: "[p]lease see attached supplemental IRS records for Paul Sylvester for 2013-2020" (the "Email"). Attached to the Email was a pdf entitled: "Sylvester Tax records 2013-2020.pdf." The Email's subject line was "Paul Sylvester Case 2019-09379." The Email contained no other information.

In December 2023, Mr. Sylvester sent written discovery requests to Ochsner. One month later, Ochsner filed an ex parte motion to dismiss based on abandonment. Ochsner's motion was accompanied by its attorney's affidavit of last case activity. The trial court granted Ochsner's motion and dismissed the case. [2]

In February 2024, Mr. Sylvester filed the Motion alleging that, during the October 21, 2021 meeting, Ochsner's attorney requested that he provide supplemental responses to the 2019 Discovery Requests with tax records. According to Mr. Sylvester, the Email was formal discovery and thus was a step

---

[1] *See Davis v. Naquin,* 23-0057, p. 5 (La. App. 1 Cir. 9/15/23), 375 So.3d 968, 972 (observing that "[t]he jurisprudence clearly establishes that motions to withdraw or enroll as counsel or to substitute counsel are not considered formal steps before the court in the prosecution of the suit").

[2] *See Roberts v. New Orleans Symphony*, 03-2206, p. 10 (La. App. 4 Cir. 9/1/04), 883 So.2d 452, 458 (citations omitted) (observing that "[i]t is well settled that the dismissal of a suit on grounds of abandonment is a dismissal without prejudice").

for abandonment purposes. Given the Email was a step, Mr. Sylvester contended that the three-year abandonment period would not run until June 2025. The trial court, finding merit in Mr. Sylvester's argument, granted the Motion. This writ followed.

***Governing Law and Standard of Review***

The controlling statutory provision on abandonment is La. C.C.P. art. 561. This provision states that generally (with the exception of succession proceedings), "[a]n action is abandoned when the parties fail to take any step in its prosecution or defense in the trial court for a period of three years." La. C.C.P. art. 561(A)(1). Under this provision, abandonment is self-executing, occurring automatically upon the passing of three years without a step being taken by either party and is effective without court order. *Clark v. State Farm Mutual Automobile Insurance Co.*, 00-3010, p. 6 (La. 5/15/01), 785 So.2d 779, 784. "[B]ut, on ex parte motion of any party or other interested person by affidavit that states that no step has been timely taken in the prosecution or defense of the action, the trial court shall enter a formal order of dismissal as of the date of its abandonment." La. C.C.P. art. 561(A)(2). This provision still further states that "[a]ny formal discovery as authorized by this Code and served on all parties whether or not filed of record, including the taking of a deposition with or without formal notice, shall be deemed to be a step in the prosecution or defense of an action." La. C.C.P. art. 561(B).

To avert abandonment, La. C.C.P. art. 561 has been construed as imposing three requirements on plaintiffs:

First, plaintiffs must take some "step" towards prosecution of their lawsuit. In this context, a "step" is defined as taking formal action before the court which is intended to hasten the suit toward judgment, or the taking of a deposition with or without formal notice.

Second, the step must be taken in the proceeding and, with the exception of formal discovery, must appear in the record of the suit.

Third, the step must be taken within the legislatively prescribed time period of the last step taken by *either party*; sufficient action by either plaintiff or defendant will be deemed a step.

*Clark*, 00-3010, p. 6, 785 So.2d at 784 (emphasis in original, footnotes omitted, and reformatted).

Abandonment balances two competing policy interests:

(1) the desire to see every litigant have his day in court without the risk of losing same due to technical carelessness or unavoidable delay, and

(2) the legislative purpose that suits, once filed, should not linger indefinitely, preserving stale claims from the normal extinguishing operation of prescription.

*Prestenback v. Hearn*, 11-1380, p. 4 (La. App. 4 Cir. 2/22/12), 85 So.3d 256, 259 (citations omitted and reformatted). When a party fails to take a step in the prosecution of the case during the abandonment period, "the logical inference is that the party intends to abandon the claim and the law gives effect to this inference." *Clark*, 00-3010, p. 10, 785 So.2d at 786-87 (internal quotations and citation omitted).

"Given the balancing function served by abandonment, Louisiana's jurisprudence tends to be inconsistent; no bright lines exist." *Clark*, 00-3010, p. 11, 785 So.2d at 787 (internal quotations and citation omitted). Nonetheless, two settled principles are dispositive here—a jurisprudential and a statutory one. The jurisprudential principle is that Louisiana courts have uniformly held that an extrajudicial effort—like informal settlement

4

negotiations between parties—is not a step that interrupts abandonment.

*Clark*, 00-3010, p. 16, 785 So.2d at 790. The statutory principle is that

formal discovery—albeit outside the record--is a step that interrupts

abandonment; this principle is codified in La. C.C.P. art. 561(B) and echoed

in the discovery code articles.[3]

> The standard of review applicable to abandonment rulings is two-fold:
>
> Whether a step in the prosecution or defense of a case has been taken in the trial court for a period of three years is a question of fact subject to manifest error analysis; by contrast, whether a particular act, if proven, [interrupts] abandonment is a question of law that is examined by ascertaining whether the trial court's conclusion is legally correct.

*Williams v. Montgomery*, 20-01120, p. 6 (La. 5/13/21), 320 So.3d 1036,

1042 (internal citation and quotations omitted). Questions of law are subject

to *de novo* review. *Id.* Here, both questions of fact and law are involved.

Thus, both the manifest error and the *de novo* standards of review apply.

***Discussion***

The sole event that Mr. Sylvester contends is a step for purposes of

interrupting abandonment is the Email. The narrow issue presented is whether the

Email—as Mr. Sylvester contends and the trial court found—is formal discovery

and thus, by statute, is a step for abandonment purposes. At the hearing on the

Motion, Mr. Sylvester cited two cases in support of his argument that the Email is

formal discovery—*Breaux v. Auto Zone, Inc.*, 00-1534 (La. App. 1 Cir. 12/15/00),

---

[3] *See* La. C.C.P. art. 1474(C)(4)(providing that "[t]he serving of any discovery materials pursuant to the provisions of this Article shall be considered a step in the prosecution or defense of an action for purposes of Article 561, notwithstanding that such discovery materials are not filed in the record of the proceedings); *see also* La. C.C.P. art. 1446(D)(providing that "taking of a deposition shall be considered a step in the prosecution or defense of an action for the purposes of Article 561, notwithstanding that the deposition is not filed in the record of the proceedings").

787 So.2d 322[4]; and *Harrington v. Glenwood Regional Medical Center*, 36,556 (La. App. 2 Cir. 12/11/02), 833 So.2d 1241.[5]

Ochsner counters that Mr. Sylvester's reliance on those two cases is misplaced. According to Ochsner, those two cases are distinguishable from this one in two respects: (i) in neither case is there any evidence that the correspondence, which the court found qualified as formal discovery, was sent in regard to settlement negotiations, as the overwhelming evidence reflects was the situation here; and (ii) in both cases, the individual who sent the correspondence was enrolled as attorney of record, which was not the situation here.

Ochsner's counter argument has two components—a factual and a legal one. Factually, Ochsner argues that the Email is informal correspondence related to settlement discussions—an extrajudicial effort—not formal discovery. Legally,

---

[4] In *Breaux*, the appellate court held that the plaintiffs' attorney's transmittal letter, which had medical reports attached to it, was formal discovery for purposes of abandonment. In that case, the plaintiffs' attorney sent the transmittal letter with the medical records as a supplemental response to interrogatories that defense counsel had sent requesting all medical reports. The appellate court observed that "the correspondence could be construed as a formal response to interrogatories in that plaintiffs' counsel gave the reports of medical doctors treating plaintiff which had been requested by interrogatories which mentioned the need to supplement the responses." *Breaux*, 00-1534, p. 6, 787 So.2d at 326.

[5] In *Harrington,* the appellate court held that correspondence, which had an attached medical release, was formal discovery under La. C.C.P. art. 561(B) because "a request properly made under art. 1465.1 is formal discovery as authorized by the code." *Harrington*, 36,556, pp. 4-5, 833 So.2d at 1244. La. C.C.P. art. 1465.1 provides:

> Any party may serve upon the plaintiff or upon any other party whose medical records are relevant to an issue in the case a request that the plaintiff or other authorized person sign a medical records release authorizing the health care provider to release to the requesting party the medical records of the party whose medical condition is at issue. The release shall be directed to a specific health care provider, shall authorize the release of medical records only, and shall state that the release does not authorize verbal communications by the health care provider to the requesting party.

6

Ochsner argues that the Email cannot be formal discovery because Mr. Smith was not enrolled as attorney of record when he sent the Email. Both components support our determination that the Email is not formal discovery and thus is not a step for abandonment purposes. We separately address each component.

**Factual Issue—Informal Email Regarding Settlement Is Not Formal Discovery And Thus Is Not A Step**

Ochsner contends that the Email is not formal discovery because it was sent in response to an informal request by Ochsner's counsel—Brittany Sloan—during settlement negotiations. Ochsner thus contends that the Email falls in the category of an informal, extrajudicial effort. *See Clark*, 00-3010, p. 16, 785 So.2d at 790. In support, Ochsner cites Ms. Sloan's June 10, 2021 email to Mr. Smith. Ms. Sloan's email requested documentation for purposes of settlement negotiation; her email stated as follows:

> Thanks for sending over a [settlement] demand. Couple questions and things we need:
>
> 1) Is this a global demand to include the Patient Compensation Fund?
>
> 2) For us, and the PCF, we need documentation of everything you are claiming for our assessment—For example, this would include but not limited to. documentation of Mr. Sylvester's pay for the lost wages and income claims: documentation that incarceration was $50,000.00; documentation for legal fees and the bond fees; medical documentation of a PTSD diagnosis due to the care and treatment at Ochsner.
>
> 3) If you have any support with a quantum that would be helpful, and we will conduct a quantum as well. Thanks so much and we can discuss anytime.

Mr. Smith, on the following day, replied: "[t]his settlement [demand] is an offer to settle all of the claims of Mr. Sylvester. I will begin getting information together as

per #2." Likewise, as noted elsewhere in this writ opinion, Mr. Sylvester, in the Motion, acknowledged that during the June 21, 2021 meeting, he was asked to supplement the 2019 Discovery Requests with tax records.

At the hearing on the Motion, Mr. Sylvester, through counsel,[6] argued that the Email was a formal, supplemental discovery response for the following reason:

> [T]his [medical malpractice] case was first filed in Jefferson Parish under a different case number for discovery purposes, and interrogatories and request for production were submitted to the plaintiff. The plaintiff responded with a 277-page PDF that contained all of the things that were asked for. So if you notice from the discovery that was attached to the defendant's opposition [to the Motion], it's a very abbreviated—I think there's 15 interrogatories and there's six Request for Production of Documents. . . . So the stuff that was asked for—everything that was asked for by Ms. Sloan in her e-mail is discoverable information. All of the information that Ms. Sloan asked for in her e-mail would supplement the discovery that was already submitted [in the Jefferson Parish discovery proceeding].[7]

Mr. Sylvester, thus, acknowledged that the Email was in response to Ms. Sloan's requests and was a supplement to the discovery response he previously made in the Jefferson Parish case.

Nonetheless, Mr. Sylvester's position, advocated in his Motion, was that the Email could be linked to the 2019 Discovery Requests. Stated otherwise, Mr. Sylvester contended that the Email was responsive to one of the Requests for Production included in the 2019 Discovery Requests—REQUEST FOR PRODUCTION NO. 4:

---

[6] As noted elsewhere in this writ opinion, Mr. Sylvester's prior counsel, Mr. Smith, made an oral motion to re-enroll at the hearing on the Motion. Mr. Smith, thus, was allowed to argue at the hearing on the Motion.

[7] The same argument was set forth in Mr. Smith's affidavit, which was submitted untimely on the afternoon before the motion hearing. The trial court granted Ochsner's motion to strike the affidavit as untimely.

8

> Please produce any and all documents you intend to introduce at trial in this matter to support any alleged special damages you believe you are entitled to and for which you seek recovery as alleged in your Petition.

Capsulizing the issue before it, the trial court, at the Motion hearing, observed:

> I see the two different perceptions of what transpired with these tax returns. Plaintiff is arguing that it is a supplement to the discovery or response to the discovery propounded by a date in December of 2019. Defense counsel is stating that it was a response, albeit just a response to a settlement request in early 2021, was it?

Agreeing with Mr. Sylvester, the trial court deemed the Email a supplemental discovery response. The trial court observed that "it is incumbent upon both parties to supplement discovery when information becomes available" and deemed the Email to be a "supplemental response to discovery." On that basis, the trial court granted the Motion.

We conclude, as Ochsner contends, that Mr. Sylvester's attempt to link the Email to the 2019 Discovery Requests—which Mr. Sylvester previously had not responded to—lacks evidentiary support. The evidence shows that the Email was a response to Ms. Sloan's particular request in her April 2021 email and the request at the June 21, 2021 meeting for tax records. The Email was not in response to the single, broad request for production included in the 2019 Discovery Requests that Mr. Sylvester relied upon—REQUEST FOR PRODUCTION NO. 4.

The record reflects that the Email referred to the attached tax records as supplemental because, as Mr. Smith acknowledged, the tax records were supplemental to discovery responses Mr. Sylvester previously produced in the Jefferson Parish case. Given that Mr. Sylvester previously had not responded to the

9

2019 Discovery Requests, the Email could not be supplemental to the 2019 Discovery Requests. Moreover, the Email was closer in time to the 2021 settlement negotiations than the 2019 Discovery Requests.

In sum, the evidence establishes that the Email was a response to the informal requests for documentation made by Ochsner's counsel, Ms. Sloan, during settlement negotiations. The Email does not constitute formal discovery; rather, the Email constitutes an informal, extrajudicial effort, which is insufficient to constitute a step for abandonment purposes. *Clark*, 00-3010, p. 16, 785 So.2d at 790. Accordingly, the trial court was manifestly erroneous in finding the Email to be formal discovery under La. C.C.P. art. 561(B).

**Legal Issue—Attorney of Record Must Sign Formal Discovery**

Ochsner further contends that the Email cannot be formal discovery, as a matter of law, because an attorney of record must sign formal discovery; and Mr. Smith was not enrolled as attorney of record when he sent the Email. In support, Ochsner cites La. C.C.P. art. 1420(A),[8] which provides that all discovery requests and responses are required to be signed by an attorney of record if the party is represented by an attorney.

In his opposition to the writ, Mr. Sylvester cites *Stillman v. Bd. of Sup'rs of S. Univ. & Agr. & Mech. Coll.*, 07-2107 (La. App. 1 Cir. 6/6/08), 992 So.2d 523,

_____

[8] La. C.C.P. art. 1420(A) provides:

> Every request for discovery, or response or objection thereto, made by a party represented by an attorney shall be signed by at least one attorney of record in his individual name, whose address shall be stated. A party who is not represented by an attorney shall sign the request, response, or objection and state his address.

as creating an exception to the general rule that an attorney of record must sign discovery. According to Mr. Sylvester, the court, in *Stillman*, carved out an exception for an attorney who is not counsel of record but who has a "prior connection to the case." *Stillman*, 07-2107, p. 5, 992 So.2d at 526.

Even assuming the cited language in *Stillman* could be read to support Mr. Sylvester's contention, creating such an exception would violate the discovery code articles. The jurisprudence has required strict compliance with the statutory requirements for formal discovery to allow such discovery to constitute a step. *See Sullivan v. Cabral*, 32,454 (La. App. 2 Cir. 10/27/99), 745 So.2d 791 (observing the plaintiff's act of mailing interrogatories to an attorney who no longer represented the defendant could not constitute a step for purposes of La. C.C.P. art. 561). As a commentator has observed, "the discovery exception [for abandonment] exists in the discovery code articles and allows discovery to be considered a step only when its rules are fully satisfied." Stephen Cox, *Abandonment-Focusing on Drafters' Intent to Answer Who and What Can Prevent Abandonment*, 83 LA. L.REV. 1513, 1529 (2023). Generally, discovery not signed by an attorney of record cannot be formal discovery for purposes of being a step in the prosecution of the action. Such is the case here.

On June 21, 2022, when he sent the Email, Mr. Smith was not Mr. Sylvester's attorney of record. Mr. Smith withdrew in 2020; he did not re-enroll as attorney of record until 2024 at the Motion hearing.[9] Because Mr. Smith was not

---

[9] Mr. Smith filed a written motion to re-enroll the day before the Motion hearing, but it had not been signed at the time of the hearing.

Mr. Sylvester's attorney of record when he sent the Email, the Email, as a matter of law, fails to comply with one of the discovery code articles—La. C.C.P. art. 1420(A)—and cannot constitute formal discovery. Thus, the trial court legally erred in finding the Email constituted formal discovery.

In sum, we find—for factual and legal reasons—that the Email is not formal discovery and, thus, is not a step for abandonment purposes pursuant to La. C.C.P. art. 561(B).

*Conclusion*

For the foregoing reasons, we grant Ochsner's writ, reverse the Judgment, and render judgment dismissing Mr. Sylvester's claims against Ochsner without prejudice.

**WRIT GRANTED; JUDGMENT REVERSED; JUDGMENT RENDERED DISMISSING CASE WITHOUT PREJUDICE**